IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DENISE B., | |
| Plaintiff, | **8:24-CV-00395** |
| vs. | |
| FRANK BISIGNANO, Acting Commissioner of Social Security,[1] | **MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REMAND THE COMMISSIONER'S DECISION** |
| Defendant. | |

Plaintiff Denise B.[2] seeks judicial review of the denial of her application for a period of disability benefits and disability insurance benefits by defendant Commissioner of the Social Security Administration. Filing 1 at 1. Denise B. moved for an order reversing and remanding the Commissioner's decision. Filing 1 at 2; Filing 23 at 1. In response, the Commissioner filed a motion to affirm the Commissioner's decision denying disability benefits. Filing 18 at 1. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Denise B.'s motion to remand.

## I.   INTRODUCTION

### A.  Procedural Background

Denise B. filed for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, on November 5, 2021, alleging disability with an onset date of January 15, 2018. Filing 6-2 at 11 (Administrative Record (AR) 10). Denise B.'s

---

[1] Frank Bisignano became the Acting Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Michelle Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

claims were initially denied by the Social Security Administration (SSA) on January 27, 2023. Filing 6-3 at 7 (AR 83). Upon reconsideration, the claim was again denied on April 3, 2023. Filing 6-3 at 13 (AR 89).

Denise B. then filed a written request for a hearing that was received on April 20, 2023. Filing 6-4 at 17 (AR 105); (*see* 20 C.F.R. 404.929 *et seq.*). The administrative law judge (ALJ) held the hearing by telephone on September 26, 2023. Filing 6-2 at 11 (AR 10). During the hearing Denise B. amended her alleged disability onset date to December 28, 2019. Filing 6-2 at 11 (AR 10). After consideration of the evidence the ALJ affirmed the Commissioner's decision and concluded that Denise B. was not under a disability from the amended alleged onset date, December 28, 2019, through the date last insured,[3] June 30, 2020. Filing 6-2 at 12 (AR 11); Filing 6-2 at 13 (AR 12). Denise B. requested review of the ALJ's decision before the Appeals Council. Filing 6-2 at 2 (AR 1). The Appeals Council concluded that there was no basis for granting Denise B.'s request for review. Filing 6-2 at 2 (AR 1). Denise B. then timely filed this action seeking judicial review of the ALJ's ruling by this Court. Filing 1 at 1.

**B. Factual Background**

*1. The Claimant and Her Alleged Disabilities*

Denise B. was fifty-seven at the time of her amended alleged disability onset date of December 28, 2019. Filing 6-3 at 3 (AR 79). This classifies Denise B. as a person of advanced age. 20 C.F.R. § 404.1563(e) (establishing that a person of advanced age is 55 or older). Denise B. has completed four years of college, which places her in the fourth classification of educational

---

[3] Denise B.'s work and income history show that she only earned and contributed to the Social Security Disability Trust Fund enough to remain insured through June 30, 2020. Filing 6-2 at 12; *e.g.*, 1 Soc. Sec. Prac. Guide § 9.02 ("To be fully insured an individual must have 40 quarters of coverage, or at least 10 years of credited earnings."); *see* 20 C.F.R. § 404.315(a)(1) (explaining that an individual is entitled to disability benefits before attaining retirement age if that individual has enough social security earnings to be insured); *see also* 20 C.F.R. §§ 404.130, 404.131.

ability. Filing 6-6 at 6 (AR 177); 20 C.F.R. § 416.694(b)(4) (designating that individuals with a high school education and above can do semi-skilled through skilled work). Denise B.'s past relevant work experience includes work as a retail store owner/manager. Filing 6-6 at 12 (AR 183). Denise B. owned and managed a consignment store from January 2008 to January 2018. Filing 6-6 at 12 (AR 183); Filing 6-2 at 53 (AR 52). At this consignment store she sold furniture, houseware, and décor. Filing 6-2 at 53 (AR 52). Denise B. testified that she was constantly on her feet, and frequently had to unload and load vehicles, and lift over twenty to fifty pounds. Filing 6-2 at 54 (AR 53); Filing 6-2 at 57 (AR 56); Filing 6-2 at 58 (AR 57). Denise B. was self-employed between 2020 and 2021, several months after her amended alleged onset date of December 19, 2019. Filing 6-2 at 49 (AR 48). Her self-employment consisted of buying and selling antiques on eBay marketplace. Filing 6-2 at 48 (AR 47); Filing 6-2 at 51 (AR 50). However, given the low amount of Denise B.'s earnings the ALJ decided that the self-employment did not rise to the level of substantial gainful activity under 20 C.F.R. § 416.971 *et seq.*; Filing 6-2 at 14 (AR 13). In her disability report dated November 5, 2021, Denise B. alleged that she has diverticulitis, degenerative disc disease, generalized anxiety disorder, hypertension, sciatica, osteoarthritis in the back, hand, ankles, and hips, a pinched nerve in her back, and hip problems. Filing 6-6 at 5 (AR 176).

Denise B. claims three grounds in support for her motion to reverse and remand. Denise B. states that in developing a residual functional capacity (RFC) consistent with the ability to do light work, the ALJ erred as he failed to identify any evidence regarding Denise B.'s ability to function in the workplace. Filing 24 at 8. As a result, Denise B. also avers that the ALJ erred by failing to further develop the record, as well as failing to consider evidence that did not strictly fall into the 6-month period of disability. Filing 24 at 8; Filing 24 at 13. The Court will provide a concise

statement of the medical records and other evidence that are relevant to Denise B.'s challenges to the ALJ's decision with the purpose of providing a more focused discussion rather than an exhaustive chronological recital of treatment records.

2. *Medical Records and Evidence*

a.   Medical Records and Opinions Created Before December of 2019

Denise B. alleges that by her amended alleged disability onset date of December 28, 2019, she was no longer able to work as a retail manager due to a combination of severe impairments. Filing 24 at 8; Filing 6-2 at 48 (AR 47). Denise B.'s eligibility for Social Security Disability Insurance expired on June 30, 2020. Filing 6-3 at 5 (AR 81). Thus, Denise B. concedes that the relevant period for her disability claim spans only six months, from December of 2019 to June of 2020. Filing 24 at 8.

On September 5, 2019, Denise B. arrived at the St. Elizabeth Regional Medical Center's Emergency Department complaining of a laceration on her lower leg from a fall. Filing 7-1 at 213 (AR 627); Filing 7-1 at 214 (AR 628). Emergency Department staff noted that despite the leg laceration, she was "able to ambulate easily (sic) without difficulty." Filing 7-1 at 213 (AR 627). Denise B. was discharged the same day "in good condition." Filing 7-1 at 213 (AR 627); Filing 7-1 at 214 (AR 628).

Six days later on September 11, 2019, Denise B. again arrived at the St. Elizabeth Regional Medical Center's Emergency Department. Filing 7-1 at 214 (AR 629); Filing 7-1 at 215 (AR 629). In the Emergency Department she complained of nausea, shaking, and of the leg wound from the week prior. Filing 7-1 at 214 (AR 628). She was admitted for alcohol withdrawal and for pain management due to the wound on her lower leg. Filing 7-1 at 230 (AR 644). During this hospital stay, notes from various physicians indicated that Denise B. had some difficulty with activities of daily life and impaired functional mobility. Filing 7-1 at 269 (AR 683); Filing 7-1 at 253 (AR

667); Filing 7-1 at 240 (AR 654). There is also a record of Denise B. using a walker. Filing 7-1 at 265 (AR 679); Filing 7-1 at 267 (AR 681). However, other records from this hospital stay note that Denise B. was ambulating well on her own and had normal range of motion and normal muscle tone. Filing 7-1 at 268 (AR 682); Filing 7-1 at 217 (AR 643); Filing 7-1 at 229 (AR 631). Denise B. was discharged two days later on September 13, 2019. Filing 7-1 at 270 (AR 684).

    b. Medical Records and Opinions Created Between December 2019 and June 2020

On December 29, 2019, Denise B. visited Advanced Medical Imaging due to chronic lumbar pain. Filing 8-1 at 228 (AR 1237). At this appointment, Minh Luu, MD, administered an x-ray that showed a chronic appearing compression fracture at the L1 portion of Denise B.'s spine. Filing 8-1 at 228 (AR 1237). This x-ray also showed left curvature of the spine, disc space narrowing, and moderate degenerative changes. Filing 8-1 at 228 (AR 1237).

On January 3, 2020, Denise B. visited Boshra M. Rida, MD, at the Antelope Creek Medical Clinic presenting with left side back pain. Filing 6-7 at 63 (AR 392). Denise B. stated that she had fallen six weeks prior and landed on her buttock. Filing 6-7 at 63 (AR 392). Denise B. stated that pain was sharp with movement, but achy and dull, and the pain was aggravated with sitting and standing. Filing 6-7 at 63 (AR 392). Dr. Rida prescribed Denise B. a pain medication and recommended an "[a]mbulatory referral to Orthopedic Surgery." Filing 6-7 at 65 (AR 394).

The next day, on January 4, 2020, Denise B. visited the St. Elizabeth Regional Medical Center's Emergency Department. Filing 7-1 at 166 (AR 580). She presented with nausea and vomiting, with a history of lower back pain. Filing 7-1 at 272 (AR 686). An examination conducted by Jason McCoy, PAC, showed that Denise B. was alert and oriented, had normal musculoskeletal range of motion, and left lumbar tenderness. Filing 7-1 at 275 (AR 689). Another examination

conducted by Michael A. Pace, MD, showed back pain, normal range of motion and muscle tone, and no gait problems or joint swelling. Filing 7-1 at 285 (AR 699).

During this visit a CT was conducted of Denise B.'s pelvis. Filing 7-1 at 177 (AR 591). The CT showed a small cyst on the upper pole of Denise B.'s left kidney and mild diverticulosis. Filing 7-1 at 177 (AR 591). Denise B. was discharged two days later on January 6, 2020. Filing 7-1 at 311 (AR 725). On her discharge date Denise B. explained that her back and abdominal pain was mostly controlled and that she was "moving around well enough." Filing 7-1 at 312 (AR 726). The hospital discharge summary completed by Sheila Tuma, ARNP, stated that Denise B. was "moving around well enough to return home." Filing 7-1 at 319 (AR 733).

c.   Medical Records and Opinions Created After June 2020

On October 9, 2020, three months after her date last insured, Denise B. began pain treatment with Dr. Charles Whitten at the Nebraska Pain Institute. Filing 8-1 at 26 (AR 1035); Filing 6-3 at 5 (AR 81). Denise B. stated at this appointment that her pain was "burning, numbing, aching, sharp, stabbing, shooting, stinging, and frequent." Filing 8-1 at 26 (AR 1035). She also stated that her pain gets better while lying down, sitting, resting, and with medications. Filing 8-1 at 26 (AR 1035). Denise B. also explained that physical therapy was ineffective and that she was not taking any pain medications. Filing 8-1 at 26 (AR 1035). During the physical exam Dr. Whitten found that Denise B. had normal muscle tone and bulk, a positive left straight leg raise, back pain, and a gait disturbance. Filing 8-1 at 31 (AR 1040). At this visit she received a transforaminal epidural steroid injection for pain management. Filing 8-1 at 32 (AR 1041). Denise B. then visited Dr. Brandon Staub at the Nebraska Pain Institute consistently for several months to receive the steroid injections. Filing 8-1 at 35 (1044); Filing 8-1 at 44 (1053); Filing 8-1 at 50 (1059). At the hearing Denise B. testified that the injections gave her relief at first but gradually stopped being effective. Filing 6-2 at 65 (AR 64). Later in October Dr. Staub and Dr. Whitten opined that Denise

6

B. needed a spinal fusion to treat her lumbar degenerative disc disease. Filing 8-1 at 32 (AR 1041); Filing 8-1 at 40 (AR 1048). However, Dr. Staub indicated that she was not a candidate for spine surgery until she was able to get control of her alcoholism and smoking. Filing 8-1 at 39 (AR 1048). On January 20, 2021, Dr. Staub recommended ceasing the steroid injections due to the brevity of relief that Denise B. was experiencing. Filing 8-1 at 83 (AR 1092).

Despite the compression fracture and pain, Denise B. repeatedly denied gait issues or joint swelling. Filing 8-1 at 63 (AR 1072); Filing 8-1 at 54 (AR 1063); Filing 8-1 at 46 (AR 1055); Filing 8-1 at 38 (AR 1047). Further, Dr. Staub noted that Denise B. had normal muscle tone, bulk, range of motion, and 5/5 strength. Filing 8-1 at 63 (AR 1072); Filing 8-1 at 54 (AR 1063); Filing 8-1 at 46 (AR 1055); Filing 8-1 at 39 (AR 1048).

At the hearing on September 26, 2023, three years after the period of disability, Denise B. testified that she still experienced pain from her hip replacement that had been performed in 2021. Filing 6-2 at 37 (AR 36); Filing 6-2 at 66 (AR 65); Filing 7-2 at 89 (AR 1010). She testified that her sciatica causes constant excruciating pain in her back and hip. Filing 6-2 at 66 (AR 65); Filing 6-2 at 67 (AR 66). She stated that she cannot sit, walk, climb stairs or ramps, stoop, crouch, or kneel without pain. Filing 6-2 at 67 (AR 66); Filing 6-2 at 68 (AR 67); Filing 6-2 at 71 (AR 70).

### 3. The ALJ's Impairment Findings

Pursuant to 20 C.F.R. § 404.1520(a), an ALJ will engage in a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi,* 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Perks v. Astrue,* 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

7

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)).

The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled at step five. *See* 20 C.F.R. §§ 416.912(a)–(b), 416.960(c)(2). If it is determined that the claimant is not disabled at any step of the process, the evaluation ceases. *See* 20 C.F.R. § 416.920(a).

At step one of the five-step analysis, the ALJ will find the claimant not disabled if he or she is engaged in "substantial gainful activity." 20 C.F.R § 404.1520(a)(4)(i); 20 C.F.R § 416.920(b). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work activity involves "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ found that Denise B. had not engaged in substantial gainful activity during the period from her alleged disability onset date of December 28, 2019, through her date last insured of June 30, 2020. Filing 6-2 at 13 (AR 12). The ALJ recognized that Denise B. had earned money during this period but concluded that her earnings were too minimal to rise to the level of substantial gainful activity. Filing 6-2 at 14 (AR 13).

At step two, the ALJ examines the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). The ALJ will determine if the claimant has a severe impairment or a "combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 416.920(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If a claimant does not have a severe impairment or "combination of

impairments that is severe and meets the duration requirement" the ALJ will determine that he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii), 20 C.F.R. § 416.920(c). In this case the ALJ determined that through the date last insured Denise B.'s degenerative disc disease, vertebral compression fracture, lumbar spine radiculopathy, and hip impairments were severe as they "caused more than minimal limitations to the claimant's ability to perform basic work activities." Filing 6-2 at 14 (AR 13); *see* 20 C.F.R. § 416.920(c). On the other hand, the ALJ found that Denise B.'s impairments of hepatic steatosis, hypertension, diverticulosis, pancreatitis, lung nodule, renal cyst, Drug and Alcohol Abuse disorder, and anxiety and depressive disorders did not cause more than minimal limitation to Denise B.'s ability to perform basic work activities and were therefore nonsevere. Filing 6-2 at 14 (AR 13); Filing 6-2 at 15 (AR 14). The ALJ found that while Denise B. recently had the impairments of hepatic steatosis, hypertension, diverticulosis, pancreatitis, lung nodule, and renal cyst, the impairments were nonsevere, as they were either asymptomatic or controlled with treatment within less than 12 months. Filing 6-2 at 15 (AR 14); *see* Filing 6-7 at 52 (AR 381) ("benign hypertension"); *see also* Filing 7-1 at 319 (AR 733) ("unremarkable colonoscopy"); Filing 7-1 at 331 (AR 745) (normal mental, heart and lung signs).

In making the nonseverity finding as to Denise B.'s Drug and Alcohol Abuse disorder and anxiety and depressive disorders, the ALJ considered the four functional areas of mental functioning known as the "paragraph B" criteria pursuant to 20 C.F.R., Pt. 4040, Subpt. P, App. 1. Filing 6-2 at 15 (AR 14); Filing 6-2 at 16 (AR 15). "To satisfy the paragraph B criteria, [the] mental disorder must result in 'extreme' limitation [in one functional area], or 'marked' limitation in [two functional areas.] 20 C.F.R., Pt. 4040, Subpt. P, App. 1. The first area of mental functioning is the claimant's ability to understand, remember, and apply information. 20 C.F.R., Pt. 4040, Subpt. P, App. 1. The second area is interacting with others. 20 C.F.R., Pt. 4040, Subpt. P, App. 1. The third

functional area is concentrating, persisting, or maintaining pace. 20 C.F.R., Pt. 4040, Subpt. P, App. 1. The last area is adapting or managing oneself. 20 C.F.R., Pt. 4040, Subpt. P, App. 1. In each functional area the ALJ found that Denise B. had no limitations. Filing 6-2 at 15 (AR 14); Filing 6-2 at 16 (AR 15). Denise B.'s lack of limitations in the paragraph B criteria led the ALJ to determine that her mental disorders were nonsevere. Filing 6-2 at 16 (AR 15).

At step three, the ALJ must determine whether the impairments meet the criteria set forth in a list of impairments provided by the Social Security Administration. *See* 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R., Pt. 4040, Subpt. P, App. 1. If the claimant's impairments meet the listed criteria the ALJ will find the claimant disabled. 20 C.F.R. § 416.920 (a)(4)(iii). If the ALJ determines that a claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four of the analysis. 20 C.F.R. § 416.920(a)(4)(iii). In this case, the ALJ found that Denise B. did not have an "impairment or list of impairments that met or medically equaled the severity of one of the listed impairments." Filing 6-2 at 16 (AR 15); 20 C.F.R., Pt. 4040, Subpt. P, App. 1., 404.1525, 404.1526. Since Denise B.'s disability did not meet or equal one of the listings in 20 C.F.R., Pt. 4040, Subpt. P, App. 1., the ALJ proceeded to the fourth step in the analysis. *See* Filing 6-2 at 17 (AR 16).

### 4. *The ALJ's Determination of RFC and Ability to do Past Relevant Work Finding*

At step four the ALJ must determine the claimant's residual functional capacity (RFC) in relation to the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). An RFC is "the most [claimants] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). Generally, the claimant bears the burden of proving the RFC. *Eichelberger v. Barnhart,* 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); s*ee* 20 C.F.R. §§ 416.912(a)(1), 416.945(a)(3). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the

claimant's own descriptions of his or her limitations." *Eichelberger,* 390 F.3d at 591 (citing *Masterson v. Barnhart,* 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 416.945(a)(3). In this case, the ALJ determined:

> After careful consideration of the entire record the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; never climb ladders, ropes, and scaffolds; and tolerate no exposure to unprotected heights or moving mechanical parts or vibration.

Filing 6-2 at 17 (AR 16).

The ALJ then determines whether the claimant is still able to perform his or her past relevant work in light of the claimant's RFC. 20 C.F.R. §§ 416.960(b), 416.920(a)(4)(iv). Past relevant work is "work [the claimant has] done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn how to do it." 20 C.F.R. § 416.960(b)(1)(i); *see* 20 C.F.R. § 416.965(a). If the claimant is able to perform past relevant work, the ALJ will find the claimant to not be disabled. 20 C.F.R. § 416.960(b)(3).

At the hearing the vocational expert, Karen Thaler, described Denise B.'s past relevant work as a retail manager as performed by Denise B. to be heavy work. Filing 6-2 at 74 (AR 73). The ALJ, in comparing the RFC with the physical and mental demands of general retail manager work, found that Denise B. had the RFC to perform work as retail manager as it is generally performed. Filing 6-2 at 23 (AR 22); *see* DOT[4] #185.167-046 (describing retail manager work as requiring light exertion).

---

[4] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. How to Find an Occupational Title and Code, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

As a result, the ALJ agreed with the vocational expert and concluded that Denise B. could perform her past relevant work as a retail manager as generally performed. Filing 6-2 at 23 (AR 22). In other words, Denise B. could perform her past relevant work as retail manager as that work was performed in the national economy even if she could not as she had performed it. *See Flynn v. Astrue*, 513 F.3d 788, 791 (8th Cir. 2008) (finding the claimant could perform work as a cashier as cashier work was performed in the national economy but not how the claimant had performed it). Accordingly, the ALJ found Denise B. was "not disabled under sections 216(i) and 223(d) of the Social Security Act through June 30, 2020, the last date insured." Filing 6-2 at 23 (AR 22).

## II. LEGAL ANALYSIS

### A. Standard of Review

After a claimant has sought review of an ALJ's decision by the Appeals Council and lost, the claimant is entitled to judicial review of the ALJ's decision in federal district court. *Smith v. Berryhill*, 587 U.S. 471 (2019); *see also* 42 U.S.C. § 405(g). On review, the district court determines "whether substantial evidence on the record as a whole supports the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (citing *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009) (internal citation omitted)). "Substantial evidence is less than a preponderance of the evidence" and is "such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations omitted)).

The substantial evidence standard requires the Court to consider "both evidence that detracts from the [ALJ's] decision, as well as evidence that supports it[.]" *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citing *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011)). However, the Court will not reverse "simply because some evidence supports a conclusion other than that reached by the [ALJ]." *Id.* (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006));

*accord Bowers v. Kijakazi,* 40 F.4th 872, 875 (8th Cir. 2022) (quoting *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir. 2000) ("We will not reverse the [ALJ's] decision 'merely because substantial evidence supports a contrary outcome.'")). "If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision." *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (citing *Goff,* 421 F.3d at 789). Further, the Court will not reverse the ALJ's decision simply because it "would have come to a different conclusion." *Id.* (quoting *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008) (internal citation omitted)). The Court should defer to the ALJ's credibility determinations as long as they are supported by good reasoning and substantial evidence. *See Despain v. Berryhill,* 926 F.3d 1024, 1028 (8th Cir. 2019).

Moreover, the Court must determine whether the ALJ's decision "complies with the relevant legal standards[.]" *Lucas v. Saul,* 960 F.3d 1066, 1068 (8th Cir. 2020) (internal citations omitted) (quoting *Halverson v. Astrue,* 600 F.3d 922, 929 (8th Cir. 2010)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (omission in original) (quoting *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011)). In conducting its review of the ALJ's decision under the substantial evidence standard, the Court "must review the record in the light most favorable to [the ALJ's] determination." *Dols,* 931 F.3d at 748 (alteration in original) (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B. Discussion

As stated above in the factual background, Denise B. raises three grounds for remanding the ALJ's determination. First, Denise B. asserts that "the ALJ failed to create an RFC supported by medical evidence of Denise B[.'s] ability to function in the workplace." Filing 24 at 8. Specifically, Denise B. argues that the ALJ did not properly support the RFC determination

13

because the record contained no medical opinions or other information indicating her functional ability. Filing 24 at 8–9. Next, Denise B. argues that the ALJ failed to develop the record because there was a lack of functional evidence in the record. Filing 24 at 8; Filing 24 at 12. Further, Denise B. argues that not only did the ALJ fail to develop the functional evidence, but the ALJ also failed to address the non-functional evidence appropriately. Filing 24 at 13.

### 1. *The ALJ Created an RFC that was Properly Supported by Substantial Evidence*

Denise B. states the ALJ erred when he created an RFC for light work, because he failed to identify any evidence regarding her ability to function in the workplace. Filing 24 at 8; *see Noerper v. Saul,* 964 F.3d 738, 744 (8th Cir. 2020) (stating that an RFC is a decision that must be supported by evidence of ability to function in the workplace). Denise B. argues that because the record contained no information indicating the degree to which she could perform workplace activities, there was not enough evidence to create an RFC. *See* Filing 24 at 8–9. Denise B. concludes that the ALJ created the RFC based on his own inferences and that there is no reliable evidence providing a basis for the conclusion that Denise B. can perform light work. Filing 24 at 12–13.

The ALJ concluded that there was sufficient evidence to show Denise B. had severe spine and hip impairments during the relevant period. Filing 6-2 at 18 (AR 17). The ALJ found Denise B.'s other impairments of hepatic steatosis, hypertension, diverticulosis, pancreatitis, lung nodule, renal cyst, Drug and Alcohol Abuse disorder, and anxiety and depressive disorders were nonsevere. Filing 6-2 at 14 (AR 13); Filing 6-2 at 15 (AR 14). The ALJ considered Denise B.'s nonsevere impairments when he formulated the RFC, and he found that her nonsevere impairments did not cause more than minimal limitations. Filing 6-2 at 17 (AR 16); *see* 20 C.F.R. § 416.945(a)(2) (explaining that medically determinable impairments that are nonsevere are to be assessed when formulating an RFC. The ALJ determined that despite Denise B.'s severe and

14

nonsevere impairments she still had the RFC to perform light work, with some exertional and postural limitations. Filing 6-2 at 19 (AR 18); Filing 6-2 at 22 (AR 21); Filing 6-2 at 23 (AR 22). The physical exertion requirements of light work include, "lifting no more than 20 pounds at a time with frequently lifting or carrying of objects weighing up to 10 pounds . . . a good deal of walking or standing [and] some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Denise B. contends that the ALJ needed to evaluate physician's opinions about her ability to function in the workplace, in addition to the objective and subjective measures of her physical abilities contained in the record. Filing 24 at 11. Denise B. relies heavily on *Noerper v. Saul* to support the premise that functional evidence is required in order to formulate a proper RFC. *See* Filing 24 at 9–12; *Noerper,* 964 F.3d at 744–47. The court in *Noerper* declined to affirm the ALJ's RFC determination because the record was "fatally lacking," and had "no reliable evidence" to support the conclusion that the claimant could stand or walk for 6 hours in an 8-hour workday. *Noerper,* 964 F.3d at 746. The court in *Noerper* reversed and remanded the case because "the absence of evidence translating the medical evidence and subjective complaints into functional limitations, coupled with the failure to address or resolve the differences between the medical opinions of [two doctors] leaves us unable to determine the permissibility of the Commissioner's RFC determination." *Noerper*, 964 F.3d at 747 (internal citation omitted). Denise B. argues that her case is similar to *Noerper* because the ALJ lacked evidence to support the determination that she could perform light work. Filing 24 at 11. Denise B. opines that the ALJ made the determination based on his own inferences because of this lack of medical opinion evidence. Filing 24 at 11–12; *see Combs v. Berryhill,* 878 F.3d 642, 646 (8th Cir. 2017) ("The ALJ 'may not simply draw his own inferences about plaintiff's functional ability from medical reports.'" (quoting

15

*Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004))). Ultimately, Denise B. argues that "[r]emand is required in this case because '[t]here is simply no reliable evidence providing a basis for the specific conclusion that [Denise B.] can [perform light work].'" Filing 24 at 12 (quoting *Noerper,* 964 F.3d at 746). The Court disagrees.

Denise B.'s argument is not wholly misguided. Since the RFC is a medical determination, it does require the ALJ to assess some medical evidence of the claimant's ability to function in the workplace. *Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016) ("Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." (quoting *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007))). However, an ALJ does not need to cite every shred of evidence, "so long [as] he builds a logical bridge from the evidence to his conclusion." *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010) (internal citation omitted); *see Noerper,* 964 F.3d at 746 (explaining that an ALJ need not obtain a functional description that wholly connects the dots between medical evidence and the precise limitations of the claimant's functionality). Although the RFC is mostly created from medical evidence the RFC remains "an administrative decision reserved to the [SSA]." *Montgomery v. O'Malley,* 122 F.4th 1059, 1064 (8th Cir. 2024) (alteration in original) (quoting *Cox v. Astrue,* 495 F.3d 614, 619 (8th Cir. 2007)); *see* 20 C.F.R. § 416.946(a).

Contrary to Denise B.'s contentions, the Eighth Circuit Court of Appeals has not held that there is a requirement that an RFC finding be supported by a specific medical opinion. *Hensley,* 829 F.3d at 932 (citing *Myers v. Colvin,* 721 F.3d 521, 526–27 (8th Cir. 2013) (affirming RFC without medical opinion evidence)); *see Perks v. Astrue,* 687 F.3d 1086, 1092–93 (8th Cir. 2012) (affirming ALJ's rejection of medical opinion evidence in creating RFC); *see also Twyford v. Comm'r, SSA,* 929 F.3d 512, 518 (8th Cir. 2019) ("We do not require that every aspect of an RFC

16

finding "be supported by a specific medical opinion," only that it "be supported by some medical evidence of the claimant's ability to function in the workplace." (internal citation omitted)). "In the absence of medical opinion evidence, 'medical records prepared by most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley,* 829 F.3d at 932 (alteration in original) (quoting *Johnson v. Astrue,* 628 F.3d 991, 995 (8th Cir. 2011)); *see Steed v. Astrue,* 524 F.3d 872, 875–76 (8th Cir. 2008) (finding that mild, minimal, and normal objective medical records can support an RFC without medical opinion evidence with regard to work-related restrictions).

There is no doubt that the record as a whole lacks medical opinion evidence relating to Denise B.'s ability to function in the workplace. However, the ALJ only needs to look at the medical records, observations, and descriptions from the claimant and her physicians to develop a proper RFC. *Schmitt v. Kijakazi,* 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Hensley,* 829 F.3d at 931–32 ("The [ALJ] must determine a claimant's RFC based on all of the relevant evidence, including medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." (internal citation omitted))). As such, the Court need only determine if the ALJ had substantial evidence to conclude that Denise B. could perform light work. *See Swink v. Saul,* 931 F.3d 765, 769 (8th Cir. 2019) (holding that the court must affirm the ALJ's RFC assessment if a "reasonable mind would find [the evidence] adequate to support it." (internal quotation omitted)). The Court concludes that the ALJ had substantial evidence in this case.

The evidence cited by the ALJ substantially supports the RFC. Filing 24 at 11. The ALJ properly accounted for Denise B.'s exertional and postural limitations based on records from January of 2020 that show pain and tenderness. Filing 6-2 at 19 (AR 18); Filing 6-7 at 63 (AR 392). The imaging-confirmed lumbar spine abnormalities, objective examination signs of

lumbosacral and hip-area pain and weakness, and potential fatigue and dizziness side effects of opioids and injection therapy build a logical bridge from the evidence to the ALJ's determination that Denise B. can perform light work. Filing 8-1 at 228 (AR 1237); Filing 6-7 at 63 (AR 392); Filing 6-7 at 65 (AR 394); *see Stephens v. Berryhill,* 888 F.3d 323, 328 (7th Cir. 2018) (finding that a consultative exam and subjective complaints supported the ALJ's RFC decision because the ALJ "built a logical bridge from the evidence to her conclusion."). The objective medical evidence in this case is consistent with functional limitations and properly supports the ALJ's RFC determination. *See Hensley,* 829 F.3d at 932 (finding that treatment records and a disability exam were sufficient to show the claimant's ability to function in the workplace); *see also Myers,* 721 F.3d at 527 (finding that responsiveness to some treatments and noncompliance with other treatments, along with the claimant's past relevant work history was sufficient to support the physical component of the RFC).

Further, the ALJ justified his determination by explaining that Denise B.'s allegations of intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence in the record. Filing 6-2 at 18 (AR 17). The ALJ noted that medical records from January of 2020 "include evidence of the claimant denying gait problems, and being objectively normal in signs like alertness, range of motion, gross joints, muscle tone, strength, and sensation even despite the allegations and signs of low back pain." Filing 6-2 at 20 (AR 19); Filing 8-1 at 39 (AR 1048); Filing 6-7 at 64 (AR 393); Filing 7-1 at 285 (AR 699); Filing 7-1 at 275 (AR 689); s*ee Flynn v. Astrue,* 513 F.3d 788, 793 (8th Cir. 2008) (finding normal muscle strength and good mobility was substantial evidence to support the ALJ's RFC finding). Similarly, records from September of 2019, a few months prior to the relevant time period, show that Denise B. was "able to ambulate easily (sic) without difficulty" and had "[n]ormal range of motion." Filing 7-1 at 213 (AR 627);

Filing 7-1 at 217 (AR 631). This objective medical evidence is inconsistent with Denise B.'s allegations that her current symptoms existed during the relevant time period. *See* Filing 6-6 at 5 (AR 176); *see also* Filing 8-1 at 246 (AR 1255) (recording that in 2023 Denise B. told a spine and neurology specialist that her balance and coordination issues "start" in 2022, and that her extremity numbness and weakness, joint pain, fatigue, limping, and drop foot "start" in 2021). This objective medical evidence directly conflicts with Denise B.'s subjective allegations to the SSA about her symptoms during the relevant time period.

Contrary to Denise B.'s complaints and allegations of her health during the disability period, there is no evidence submitted to suggest she could not perform her past relevant work. *See Despain v. Berryhill,* 926 F.3d 1024, 1028 (8th Cir. 2019) ("As the claimant, [Denise B.] bears the burden of proof to establish her RFC." (internal citation omitted)). The ALJ had substantial evidence in this case, as the objective medical evidence is consistent with functional limitations and the ability to do light work. *See, e.g.*, *Fentress v. Berryhill,* 854 F.3d 1016, 1020–21 (8th Cir. 2017) (affirming an ALJ's decision that the claimant could perform light work because exams showed normal muscle strength and range of motion); *see, e.g.*, *Young v. Astrue,* 702 F.3d 489, 492 (8th Cir. 2013) (finding that normal muscle and grip strength and full range of motion is sufficient to show ability to perform light work); *see, e.g.*, *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009). The Court agrees with the ALJ that "the administrative record as a whole provided substantial evidence to support the ALJ's finding that [Denise B.] retained the RFC to perform her past relevant work and therefore was not disabled." *Johnson,* 628 F.3d at 996.

### 2.  *Further Development of the Record was not Necessary*

Denise B. subsequently argues that the ALJ failed to develop the record properly because he did not use functional evidence to support the RFC. Filing 24 at 12. Specifically, Denise B. argues that the ALJ erred when he "acknowledg[ed] [that] the record contained no medical

opinions, and without identifying any evidence that supported the specific conclusion that [Denise B.] could perform the physical demands of light work, the ALJ decided not to order a consultative examination or a medical expert's review of the evidence." Filing 24 at 12. Denise B. avers that remand is required because "the ALJ did not fulfill the duty to fully develop the record." Filing 24 at 13 (quoting *Noerper*, 964 F.3d at 747).

While it is true that an ALJ has a duty to develop the record, the ALJ's duty does not extend this far. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004); *see Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir. 2010) ("[A]n ALJ has a duty to fully develop the record, even when the claimant is represented by an attorney." (internal quotation omitted)). Although the ALJ has a duty to develop the record, "the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant[.]" *Stormo*, 377 F.3d at 806 (internal citation omitted) (citing *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004)). It is axiomatic that an ALJ need not seek additional clarifying statements from physicians "unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806 (internal citation omitted)*; see Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *see also Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010). In this case, it was not necessary for the ALJ to develop the record further.

Denise B. argues that the ALJ's apparent failure to develop the record is a reversible error because the ALJ had to draw his own conclusions from the medical evidence to determine the RFC. Filing 24 at 12–13. This a misinterpretation of the legal standard. Failing to develop the record is only a reversible error when the record "does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work." *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) (internal citation omitted) (quoting *Cox v. Apfel*, 160 F.3d 1203, 1209-10 (8th Cir. 1998)). In other words, "it is reversible error for an ALJ not to order a consultative examination

when such an evaluation is necessary for him to make an informed decision." *Byes,* 687 F.3d at 916 (quoting *Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir. 2000)). In this case the record as a whole provided the ALJ with enough evidence to make a properly informed decision.

Contrary to Denise B.'s contention, in this case at least, lack of functional evidence is not a "crucial issue" that needs further development. *See Flynn* 513 F.3d at 793 (finding that normal muscle strength and good mobility was enough evidence to support the ALJ's RFC finding without functional limitation evidence). The objective medical evidence from the relevant period indicates that Denise B. had denied gait problems, had normal range of motion, muscle tone, strength, sensation, and no joint swelling. Filing 7-1 at 275 (AR 689); Filing 7-1 at 285 (AR 699). Evidence from before and after the relevant time period also show that Denise B. could ambulate easily, had normal muscle tone, bulk, and range of motion. Filing 7-1 at 213 (AR 627); Filing 7-1 at 217 (AR 631); Filing 7-1 at 268 (AR 682); Filing 8-1 at 74 (AR 1083). The record as a whole contained enough evidence for the ALJ to determine the RFC. *Compare Swink v. Saul,* 931 F.3d 765, 768, 770 (8th Cir. 2019) (finding that several medical records including reports from neurologists and nurse practitioners, and physical capacity assessments to be sufficient evidence to determine RFC), *with Snead v. Barnhart,* 360 F.3d 834 at 838–39 (8th Cir. 2004) (reversing because the ALJ left unexplored the dispositive issue of whether cardiomyopathy may affect RFC). Consequently, further development was unnecessary.

### 3. The ALJ was Correct to Consider Only Evidence from the Relevant Time Period

Denise B. further opines that the ALJ erred by failing to consider evidence that fell outside the six-month window from December 2019 (amended alleged onset date) to June 2020 (date last insured). Filing 24 at 13. Denise B. believes that the ALJ was overly exclusive in deciding which evidence to consider, despite admitting he had summarized the entire record, including clinical

examination findings, diagnostic imaging, treatment recommendations, and physical therapy records. Filing 24 at 13. Specifically, Denise B. points to two instances where she believes the ALJ improperly disregarded evidence from outside the relevant disability period. Filing 24 at 13. Denise B. first explains that the ALJ should have considered the September 2019 evidence of walker use. Filing 24 at 13; Filing 7-1 at 265 (AR 679); Filing 7-1 at 267 (AR 681). Denise B. also believes the ALJ should have considered the September-November 2020 pain management and physical therapy reports about pain. Filing 24 at 13. The Court finds that the ALJ properly considered all evidence necessary to develop an accurate RFC.

To qualify for a period of benefits, Denise B. was required to show that she was disabled before her insurance eligibility expired on June 30, 2020. *See Tilley v. Astrue,* 580 F.3d 675, 676 (8th Cir. 2009); *see also Dipple v. Astrue,* 601 F.3d 833, 834 (8th Cir. 2010) (explaining that the claimant must prove she was disabled prior to the expiration of her insured status); 42 U.S.C. § 416 (i)(2)(A) *et seq.* Thus, the relevant time period in this case was from Denise B.'s amended alleged disability onset date, December 28, 2019, through her date last insured, June 30, 2020. *See Tilley,* 580 F.3d at 676 (explaining that the relevant time period was from the claimant's disability onset date to the expiration of her disability insurance benefits). The ALJ may "only consider the applicant's medical condition as of his or her date last insured." *Turpin v. Colvin,* 750 F.3d 989, 993 (8th Cir. 2014) (citing *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997)). However, "[e]vidence from outside the insured period can be used in 'helping to elucidate a medical condition during the time for which benefits might be rewarded.'" *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006) (quoting *Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir. 1998)). Denise B. believes that had the ALJ considered evidence from outside the relevant period, he would have

observed more consistency with the allegations and medical evidence. *See* Filing 24 at 13–14. The Court disagrees.

The Court first rejects Denise B.'s argument that the ALJ should have considered the September 2019 evidence of walker use. Although Denise B. had used a walker while recovering in the hospital in September 2019, the record also indicated Denise B. had "[n]ormal range of motion" and "was able to ambulate easily (sic) without difficulty." Filing 7-1 at 213 (AR 627); Filing 7-1 at 217 (AR 631). Further the use of the walker in September 2019 occurred in the context of Denise B.'s nonsevere impairments. Filing 7-1 at 214 (AR 628) (alcohol dependence); Filing 7-1 at 221 (AR 635) (pneumonia). Thus, while evidence of walker use may help to "elucidate [Denise B.'s] medical condition," this evidence does not support Denise B.'s allegations, nor does it prove limitations beyond those enumerated in the ALJ's RFC. *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir 2006) (internal citation omitted). Similarly, Denise B.'s argument that the ALJ should have considered the September-November 2020 pain management and physical therapy reports fails.

Although the reports from September-November 2020 indicate pain, difficulty walking, and weakness, the records also indicate that Denise B. had normal musculoskeletal range of motion, normal muscle tone and bulk, no gait disturbance, and no joint swelling. Filing 7-1 at 436 (AR 850); Filing 8-1 at 46 (AR 1055). This evidence is more consistent with Denise B.'s impairments worsening after the date last insured and is not indicative of her condition during the relevant period. Conditions that worsen after the date last insured are not a basis for a period of benefits. *See Turpin,* 750 F.3d at 994–95 (holding that impairments that have worsened in subsequent years does not demonstrate disability during the relevant time period). Accordingly, even if the medical evidence from outside the relevant period was consistent with Denise B.'s

allegations, the evidence only highlights the deterioration of Denise B.'s condition after her insured period ended.

The Court agrees with the ALJ that objective medical records from outside of the relevant time period are consistent with Denise B. having fewer abnormalities as of her date last insured. Filing 6-2 at 20 (AR 19). Denise B.'s medical records created prior to and during the alleged disability period support the conclusion that Denise B. had severe impairments that stabilized before the relevant time period. *See Bannister v. Astrue,* 730 F.Supp.2d 946, 952–53 (8th Cir. 2010) (finding that positive pre and post date last insured medical records supported the conclusion that the claimant's condition stabilized during the relevant period); *see also Davidson v. Astrue,* 578 F.3d 838, 846 (8th Cir. 2009) (holding that in the social security disability context "[i]mpairments that are controllable or amenable to treatment do not support a finding of disability." (internal citation omitted)). While Denise B. may be disabled currently, the objective medical evidence from the disability period does not support a finding of disability and evidence from outside the relevant period does not help to elucidate her impairments during the disability period. *Cox v. Barnhart,* 471 F.3d 902, 907 (8th Cir. 2006). The Court upholds the ALJ's decision choosing not to rely on evidence from outside the relevant period.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision in Denise B.'s case. Accordingly,

IT IS ORDERED that

1.  Denise B.'s Motion for an Order Remanding the Commissioner's Decision, Filing 23, is denied;

2.  Defendant's Motion for an Order Affirming the Commissioner's Decision, Filing 18, is granted;

3. The Commissioner's decision is affirmed

4. The Court will enter a separate judgment.

Dated this 3rd day of July, 2025.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge